# REPORTS

OF

# CASES ARGUED AND DETERMINED

## At January Term, 1857.

---

## O'CONNOR *vs.* THE STATE.

30   9<br>133  166

[INDICTMENT FOR OBTAINING A HORSE BY FALSE PRETENSES.]

1. *Sufficiency of indictment.*—An indictment, in the form prescribed by the Code, for obtaining property by false pretenses, is sufficiently certain and definite.

2. *Variance between allegation and proof of pretense.*—A pretense by the prisoner, "that he had in Macon seven thousand dollars," is materially variant from a pretense, "that he had seven dollars less than seven thousand in a bank in Macon."

3. *What constitutes obtaining goods by false pretenses.*—To make out the statutory offense of obtaining goods by false pretenses, (Code, § 3142,) it is not enough to prove that the pretense was false, and that the prisoner thereby obtained the property ; but, in addition thereto, the fraudulent intent at the time must be proved.

From the Circuit Court of Henry.

Tried before the Hon. C. W. RAPIER.

THE prisoner, Daniel O'Connor, was indicted at the fall term, 1855, of the circuit court of Henry, for obtaining from one John L. Hays a horse, of the value of one hundred dollars, by falsely pretending, with the intent thereby to defraud said Hays, "that he had in Macon, Georgia, the sum of seven thousand dollars." A demurrer to the indictment was interposed, and overruled.

"On the trial," as the bill of exceptions states, "the State introduced John L. Hays as a witness, who testified,

that the prisoner called on him, at Woodville, in said county, in the early part of April, 1855, to purchase a horse; that he was unwilling to sell the horse to the prisoner, unless the money would certainly be paid at maturity; that the prisoner told him, that he had seven thousand dollars deposited in a bank at Macon, Georgia, or in the Macon Bank, or the Bank of Macon, (witness was not certain which, but the conversation referred to Macon, Georgia;) that, believing this statement to be true, he consented to let the prisoner have the horse, receiving his note for one hundred dollars, due Jan. 1, 1856; that he would not have sold the horse to the prisoner, but for this statement; that the prisoner had bought from him a barrel of flour a short time previously, and had had some difficulty in paying for it; that he became uneasy about the debt a short time after the sale, and called upon the prisoner in relation to it; that the prisoner then admitted to him, that he had no money deposited in bank at Macon, Georgia, or at any other place in Macon,—refused to let witness take back the horse, and give up the note, and said, 'he had his horse, and he might help himself.' Dr. Wakefield, another witness for the State, testified, that the prisoner told him, in the fall of 1854, that he had seven dollars less than seven thousand in the hands of a friend at Macon, Georgia; that the prisoner's standing in the community was good, but witness would not have credited him for one hundred dollars, except on the faith of the alleged deposit at Macon; and that, believing his statement in respect to said deposit, witness had tried, but without success, to sell the prisoner a house and lot worth fifteen hundred dollars.

"One James Pynes was then introduced as a witness by the prisoner, and testified, that the prisoner, together with his sons, in the latter part of 1854 and the early part of 1855, had done a job of ditching for him in a short time, for which he paid the prisoner three hundred and fifty dollars; that he also knew of the prisoner's having other profitable jobs of ditching about the time of the purchase of said horse; that the prisoner's standing and resources, in April, 1855, and for some months before and

after that time, were such that any reasonable man in Woodville, having a horse to sell for one hundred dollars, would readily have sold him to the prisoner, on credit, without reference to the alleged deposit of money at Macon, and solely on the faith of his pecuniary condition, character and habits at Woodville; that the prisoner was an industrious man, of good character, and fully able to pay for the horse at the maturity of the note, if his business had not been broken up by an arrest and imprisonment at the suit of Bowden, Hays & Co., of which firm said John L. Hays was a member; that his credit was good up to that time, which was some time in the summer or fall of 1855, but was greatly impaired in consequence of the arrest and detention from work. There was other evidence, also, conducing to show that the prisoner, about the time of the purchase of the horse from Hays, was profitably and industriously engaged in ditching; that he had completed jobs to a considerable amount, and had others engaged; and that his pecuniary resources and standing, without reference to the alleged deposit at Macon, were such as to give him credit for at least the amount of one hundred dollars, and afford a good prospect of payment of that amount.

"Upon this state of facts, the prisoner requested the following charges:

"1. That if the indictment charges the prisoner with having falsely pretended that he had seven thousand dollars in Macon, Georgia; and the evidence shows that the pretense was, that he had seven thousand dollars deposited in the Macon Bank, or in the Bank of Macon,—there is a fatal variance between the allegations and proof.

"2. That if the indictment charges the prisoner with having falsely pretended that he had seven thousand dollars in Macon, Georgia, and the proof shows the pretense to have been, that he had seven thousand dollars deposited in the Macon Bank, or in the Bank of Macon, or a bank at Macon,—there is a fatal variance between the allegations and proof.

"3. That if the indictment alleges the false pretense to have been, that the prisoner had seven thousand dollars

in Macon, Georgia; and the proof shows the pretense to have been, that he had seven dollars less than seven thousand in a bank at Macon,—there is a fatal variance between the allegations and proof.

"4. That to constitute the offense for which the prisoner is indicted, it is indispensable that he should have intended to defraud; and that if they believed from the evidence that he intended, at the time of the purchase, in good faith to pay the note at maturity, and had grounds for a reasonable belief that he would be able to do so, then they must find him not guilty, even though the pretense was false, and was used to induce Hays to make the trade.

"5. That if they entertained, upon the evidence, a reasonable doubt as to whether the defendant designed at the time to defraud, or intended in good faith to pay for the horse, they must find him not guilty."

The court refused each one of these charges, and instructed the jury, in effect, 1st, that there was no variance between the allegations of the indictment and the proof; and 2dly, that if the pretense of the prisoner, as to his deposit of money in Macon, was false, and was made for the purpose of inducing Hays to part with the horse, and did so induce him, then they must find the prisoner guilty, although they might believe that he intended in good faith to pay for the horse, and had reasonable grounds for believing that he would be able to do so.

The overruling of the demurrer to the indictment, the refusal of the charges asked, and the charges given, are the matters now assigned as error.

E. C. BULLOCK and JAS. L. PUGH, for the prisoner, cited the following authorities: 1. On the question of variance: 2 Russell on Crimes, 310; Roscoe's Criminal Evidence, 101; 3 Starkie's Ev. 1531. 2. On the question of intent to defraud, as an ingredient of the offense: Scitz v. The State, 23 Ala. 42; Ogletree v. The State, 28 Ala. 693; 2 Russell on Crimes, 274; 7 Johns. 201.

M. A. BALDWIN, Attorney-General, contra, cited, on the

question of variance, People v. Haynes, 11 Wendell, 557; People v. Lambert, 9 Cowen, 558; Wharton's Criminal Law, 464. On the question of intent, People v. Herrick, 13 Wendell, 87; People v. Genung, 11 Wendell, 18.

RICE, C. J.—The defendant is indicted under section 3142 of the Code, for obtaining from John L. Hays a horse of the value of one hundred dollars, by a false pretense, and with intent to defraud. The first count of the indictment is in the form prescribed by the Code, and, of course, must be deemed sufficient.

The ingredients of the offense are, the obtaining of the horse by the false pretense, and the intent to defraud; and there cannot be a conviction according to law, unless the intent and the pretense set out in the indictment are proved.

There are cases in which it is not necessary to prove the whole of the pretense charged; as, where the part proved is a separate and independent pretense, and sufficient in point of law; or, where the part in which the variance between the allegation and proof occurs, may be rejected as surplusage. But in a case like the present, where only a single pretense, not susceptible of division into separate or independent pretenses, is stated, any material variance, between the pretense alleged and that proved, is fatal to the prosecution. A pretense by the defendant; that he "had in Macon, Georgia, the sum of *seven thousand dollars*," is materially variant from a pretense that he "had *seven dollars less than* seven thousand dollars in a bank in Macon." To avoid objections for variances of this kind, the offense ought to be stated differently in different counts, to correspond with the various phases of the case, as disclosed by the proof at the command of the grand jury or the prosecuting officer.—Waterman's Archbold's Cr. Pl. 470 to 471–2.

It is not enough to prove that the pretense of the defendant was false, and that he thereby obtained the horse; but, in addition thereto, it is essential to prove, to the satisfaction of the jury, that at the time he intended to defraud.—Rex v. Williams, 7 Carrington & Payne, 354;

3 Waterman's Archbold's Crim. Pl. 471–3 ; Barclay v. Dixon, 22 Ala. Rep. 380 ; Ogletree v. The State, 28 Ala. Rep. 693 ; The State v. Merrick, 19 Maine R. 398.

It is a familiar rule of criminal law, that if the jury entertain a reasonable doubt of the existence of any fact which is one of the ingredients of the offense charged, they ought to acquit the party charged.

Applying the views above expressed to the rulings of the court below, we think it erred in the charge given, and in refusing the 3d, 4th, and 5th charges asked by the defendant. But there was no error in refusing the 1st and 2d charges asked by him. Each of them claims the acquittal of the defendant, upon a supposed variance between the allegation and proof, as to the pretense. That supposed variance, however, does not exist, if the defendant meant to be understood, and was understood, as pretending or asserting that the bank referred to by him was "in Macon, Georgia."

There was evidence tending to show that he meant to be so understood, and that he was so understood. And the defendant, therefore, was not entitled to claim his acquittal, for the cause alleged in the 1st and 2d charges asked by him, without giving the jury an opportunity to find that he meant to be understood, and was understood, as asserting that the bank referred to in the pretense was in Macon, Georgia.

For the errors above pointed out, the judgment is reversed, and the cause remanded. The defendant must remain in custody, until legally discharged.