Todd *v.* The State.

*W. A. Peelle, J. H. Popp,* and *H. C. Fox,* for appellant.
*D. E. Williamson,* Attorney General, for the State.

---

Todd *v.* The State.

Criminal Law.—*False Pretenses.*—*Statute Construed.*—The statute 2 G. & H. 445, sec. 27, does not require, as an element of the offense thereby defined, that the false representation should be made for the purpose of accomplish-

Todd *v.* The State.

ing the particular thing which does result. A false pretense such as would tend to produce the result accomplished, an obtaining thereby, and designedly, a thing of value from another, and an intention by the transaction to defraud that other, are the only elements of the offense.

SAME.—*Indictment.*—If a particular result is designed to be accomplished by making the false pretense, which however fails, and another thing of value is obtained and accepted with like intent to defraud, the law imputes to the person making the false pretense a design from the beginning to consummate the latter result; and under our criminal code, this conclusion of law from the facts need not be alleged in the indictment, if the facts are alleged from which it inevitably results.

SAME.—Indictment against T. for obtaining money and a signature as surety by false pretenses, charging that the defendant "on, &c., at, &c., feloniously, designedly, and with intent to defraud one G., did falsely pretend to said G. that he, said T., was then and there the owner of a certain house and lot in a town named, in an adjoining state named, of great value, to wit, twenty-six hundred dollars, and a certain harness-shop, in another town named, in said adjoining state named, of great value, to wit, six hundred and fifty dollars; by means of which false pretenses, the said G. relying upon and believing the same to be true, said T. did then and there feloniously obtain from said G., on his, said T.'s sole and individual credit, the sum of four hundred dollars, lawful money, as a loan for nine months, and the signature of said G., &c., &c., with intent then and there to defraud said G.; whereas, in truth, said T. was not then and there the owner," &c., &c.

*Held,* that the indictment was not double.

*Held,* also, that though it was not alleged expressly that in making the representations the defendant's intention was to accomplish the particular result which was in fact obtained—though the indictment was not so certain as to exclude the conclusion that the defendant may have designed to accomplish his fraudulent purpose in another mode—yet it sufficiently showed a connection between the false representations made and the result produced.

SAME.—*Evidence.*—It was not necessary to prove all the pretenses charged in the indictment.

SAME.—*Similar Representations to Others.*—The State was allowed, over defendant's objection, to put in evidence representations of the defendant similar to those charged in the indictment, made to other persons than G., not in the presence of G., and not at the time the representations were made to G. *Held,* that this was error.

SAME.—*Hearsay.*—The false representations appeared to have been made and the money and signature obtained in January, at which time defendant referred G. to one B., for information as to the ownership and character of the house and lot of which the defendant represented himself as the owner; and the State put in evidence the declaration of B., made in the following November, that the defendant did not own any house and lot in said town. *Held,* that this declaration was not admissible in evidence.

Todd *v*. The State.

SAME.—*Representations of Value.*— *Variance.*—It was proved that the defendant represented the house and lot to G. as worth $2,200 or $2,300, instead of the sum laid in the indictment.
*Held*, that this was a fatal variance.

APPEAL from the Elkhart Circuit Court.

FRAZER, C. J.—This was an indictment for obtaining money and a signature as surety by false pretenses. The charge was that the defendant, "on, &c., at &c., feloniously, designedly, and with intent to defraud one Grimes, did falsely pretend to said Grimes, that he, said Todd, was then and there the owner of a certain house and lot in Ashland, Ohio, of great value, to wit, twenty-six hundred dollars, and of a certain harness-shop in Leesburg, Ohio, of great value, to wit, six hundred and fifty dollars; by means of which false pretenses (the said Grimes relying upon and believing the same to be true) said Todd did then and there feloniously obtain from said Grimes, on his, said Todd's sole and individual credit, the sum of four hundred dollars, lawful money, as a loan for nine months, and the signature of said Grimes, &c., &c., with intent then and there to cheat and defraud said Grimes; whereas, in truth, said Todd was not then and there the owner," &c., &c.

The action of the court below in overruling a motion to quash the indictment presents a question for our decision.

It is argued that the indictment is double. We do not so understand it. As we read it, but a single transaction is charged, and therefore but one offense, though consisting of several parts.

But it is also objected, that the indictment does not sufficiently show a connection between the false representations made and the result produced, inasmuch as it is not averred that the representations were made with the intent of obtaining credit with the prosecuting witness—that it is consistent with the averments that the purpose of the prisoner was to sell the property, and not to obtain the loan or the signature—and hence, that it does not appear that in making the representations the design was to accomplish the

particular result which was in fact obtained. This point requires close consideration, and a careful attention to the language of the indictment.

It will be noticed that the result is alleged to have been accomplished by the representations, and at the time that they were made, and not at a subsequent time; and that the representations were made and the money and signature obtained with intent by the defendant to cheat and defraud Grimes. We have, then, these elements: false pretenses calculated to create confidence in solvency, by which money was obtained as a loan, &c., with intent to defraud. But it is not alleged expressly that it was the defendant's intention in making the representations to defraud in the particular method stated, that is, by obtaining a loan. The indictment is not so certain as to exclude the conclusion that he may have designed to accomplish his fraudulent purpose in another mode, as by a sale of the property which he pretended to own.

The reports abound with cases where indictments like this one in the particular alluded to have passed without challenge, and convictions have been had upon them. Cases are numerous, too, where such indictments have been held good; and the books of precedents are full of forms substantially similar to the indictment in this case. See Wharton's Precedents, 528, 575, and notes.

The appellant however relies on *Commonwealth* v. *Strain*, 10 Met. 521. In that case, it was charged in the indictment, that the defendant, designedly and knowingly, falsely pretended to C. D. that a watch which he then and there had was a gold watch; by means whereof he designedly obtained from C. D. a sum of money specified, with intent, &c. It was not averred that the money was obtained as a loan, as in the case before us. The transaction was not so definitely described. The fact in evidence was, that the money was obtained upon a sale of the watch. And it was held, that the fact should have been averred—that the nature of the offense should be so specifically stated that the defendant

may be able advisedly to prepare for trial; and it was said, "that (in such a case) the false pretenses should be alleged to have been made with a view to effect such sale or exchange, and that by reason thereof the party was induced to buy or exchange, as the case may be." It was admitted that the precise question on which that case turned was new, and that there were precedents both ways. There was also a somewhat similar ruling in a like case in this court, in *Johnson* v. *The State*, 11 Ind. 481, upon the authority of Lewis' U. S. Crim. Law, 674.

We have no disposition to question the correctness of the judgment in either of those cases. But we do not think they can be properly applied to the case now in hand. It is well settled, that the false representations, to make the crime, must appear to be such as would tend to produce the result accomplished. This did not appear by the allegations in either of the cases mentioned. The statement that a watch was gold, as in the Massachusetts case, and that checks to the amount of seventeen dollars were good and of par value, as in 11 Ind. *supra*, were not, alone, if fully credited, likely to procure from a bearer, either money or a set of harness, as a gift, though desired; and this was the substance of what was alleged in those cases. But a statement that one owns real estate worth over three thousand dollars, would, if believed, reasonably establish a credit to the extent of a few hundred dollars, and would tend to procure such a loan. We cannot agree that such a statement made for the purpose of defrauding generally, as is charged, would not be the offense defined by the statute, if a loan of money was thereby obtained and accepted, with a purpose to defraud the lender, even though it should turn out that really not a loan, but a larger swindle, by a sale of the property, was contemplated. The statute does not require, as an element of the offense, that the false representation should be made for the purpose of accomplishing the particular thing which does result. A false pretense; an obtaining thereby, and designedly, a thing of value from another;

and an intention by the transaction to defraud that other; these are the only elements of the offense. 2 G. & H. 445, sec. 27. If a particular result is designed to be fraudulently accomplished by making the false pretense, which however fails, and another thing of value is obtained and accepted with like intent to defraud, the law will irresistibly impute to the defendant a design from the beginning to consummate the latter. This is a conclusion of law from the facts, and, under our criminal code, need not be alleged, if the facts are alleged from which it inevitably results. In this case we have it averred, that certain false representations, known by the defendant to be such, were made by him to Grimes, with intent to defraud Grimes; that G. believed and relied upon them; and that the defendant thereby obtained the money, &c., from G., with intent to defraud him. The statements were calculated in their nature, if believed, to inspire confidence in the ability of the defendant to pay. It is not, in terms, alleged that he "designedly obtained" the money, &c.; nor do we think this necessary. It is conclusively implied from the allegations made—or rather, the same thing is averred in other language. To obtain the money with intent to defraud, is *designedly* to obtain it.

On the trial, the State was allowed, over the defendant's objection, to put in evidence representations of the defendant, similar to those charged in the indictment, made to other persons than Grimes, not in his presence, and not at the time the representations were made to him; and also to put in evidence the declarations of one Bechtel, made in November, 1868, that the defendant did not own any house and lot in Ashland. The false representations appeared to have been made in January, 1868, at which time the defendant referred Grimes to Bechtel for information as to the ownership and character of the Ashland property.

We do not think that these items of evidence were admissible. That false representations were made to one does not tend to prove that similar statements were, at a different time and place, made to another. To prove a prisoner

guilty of a particular crime, it is not admissible to show that
on another occasion and at another place he committed, or
attempted to commit, a similar crime; for the reason that
the two facts bear no certain or probable relation to each
other, but are wholly disconnected.  Such evidence may
create a bad opinion of the general integrity of the accused,
and thus incline the mind of the jury to a readiness to be-
lieve him guilty as charged in the cause on trial.  But this
the law will not allow.  The State is not at liberty, even by
the usual modes of showing character, to attack the accused
in that particular, unless he first invites it by evidence upon
the subject.

So, as to the statements of Bechtel.  This was purely
hearsay, and not, as seems to us, an exception to the gen-
eral rule which excludes hearsay as evidence.  We are
aware that where one in dealing with another refers to a
third person for information, and the third person, being
applied to, makes statements upon the faith of which the
party acts, such statements are sometimes admissible in
evidence, the same as if the statements had been made by
the person who gave the reference.  Sometimes, indeed,
there is a just *estoppel* which forbids him to dispute the
truth of the information thus given.  But where the per-
son referred to has not been consulted until long after the
business has been consummated, and has made no state-
ments upon the faith of which any one has acted, and a
question arises, long subsequently, as to what was the real
truth of the matter, we know of no reason and no author-
ity for the position that his statements then made, not un-
der oath, shall be admitted as proof of the facts.  Such a
doctrine would be full of danger; would in criminal cases
subject the accused to the peril of conviction upon state-
ments made for the purpose, without the sanction of an
oath or the tests of a cross-examination; and would not find
support even in the unsatisfactory plea of necessity.

It was not necessary to prove all the pretenses charged

Todd *v.* The State.

in the indictment. *Rex* v. *Ady,* 7 C. & P. 140; *Commonwealth* v. *Morrill,* 8 Cush. 571; *State* v. *Mills,* 17 Me. 211.

The proof of the representation of the value of the property did not agree with the averment of the indictment as to amount. Instead of the Ashland house and lot having been stated by the prisoner to be worth $2,600, he stated that it was worth $2,200 or $2,300. In *The People* v. *Herrick,* 13 Wend. 87, a similar variance was held to be immaterial, in a case very much like this. But in *Commonwealth* v. *Davidson,* 1 Cush. 33, there was a contrary decision upon the question. So, also, in *O'Connor* v. *The State,* 30 Ala. 9, and *Rex* v. *Plestow,* 1 Campb. 494. In the last case, Lord ELLENBOROUGH said, "In an indictment for false pretenses, the pretenses must be distinctly set out, and at the trial they must be proved as laid." So, also, the rule is stated in 2 Russ. Crimes, 310. Sums of money, dates, &c., need not usually be averred with accuracy, but when, as in this case, they constitute a part of the description of the offense, they stand on a like footing with other matters of description, and must be proved as laid. It is believed that the New York case is not supported by any authority whatever.

Reversed, and remanded for new trial. Prisoner to be returned, &c.

*W. A. Woods, J. D. Arnold, A. S. Blake,* and *R. M. Johnson,* for appellant.

*D. E. Williamson,* Attorney General, for the State.

Since *Morgan* v. *The State, ante, p.* 193, was stereotyped, the case of *Regina* v. *Jenkins,* Law Rep. 1 C. C. R. 191, has been published. BYLES, J., there says, "Dying declarations ought to be admitted with scrupulous, and I had almost said with superstitious, care. They have not necessarily the sanction of an oath; they are made in the absence of the prisoner; the person making them is not subjected to cross-examination, and is in no peril of prosecution for perjury. There is also great danger of omissions, and of unintentional misrepresentations, both by the declarant and the witness, as this case shows. In order to make a dying declaration admissible, there must be an expectation of impending and almost immediate death, from the causes then operating. The authorities show that there must be *no hope whatever.* In this case the deceased said originally she had no hope at present. The clerk put down that she had no hope. She said in effect when the statement was read over to her, 'No, that is not what I said, nor what I mean. I mean that *at present* I have no hope;' which is, or may be, as if she had said, 'If I do not get better I shall die.'"

All the court were of opinion that the conviction should be quashed.