STATE v. T. C. WHEDBEE.

(Filed 25 February, 1910.)

**1. False Pretense—Definition of.**

   A criminal false pretense is a false representation of a subsisting fact, whether by oral words or conduct, which is calculated to deceive, intended to deceive, and which does, in fact, deceive, and by means of which one person obtains value from another without compensation.

### 2. False Pretense—Indictment—Sufficiency.

An indictment for obtaining goods under false pretense must show upon its face that the offense charged has been committed and the evidence must correspond with and support the allegations of the bill.

### 3. Same—Deceit—False Statements—Causal Connection.

An indictment for obtaining a note for a subscription to stock in a proposed corporation by false pretenses is fatally defective which fails to state the facts showing a causal connection between the deceit, the obtaining of the note, and the statements alleged to have been false; and the mere charge in the bill, that the representations induced the making of the note, is insufficient, where there appears to be no semblance of connection between them.

### 4. Same.

A bill of indictment charging that defendant obtained a note for subscription to stock in a certain proposed corporation by false pretenses, that the defendant falsely represented the corporation as being formed for the purpose of creating a surplus in a kindred corporation, must set forth such facts as to show the causal connection between the obtaining of the note and the representation alleged to be false; or for what the note was given, or its relation to the negotiations and dealings with respect to the organization or management of the two companies.

### 5. Same—Constitutional Law.

The accused has the constitutional right to be informed of the charge against him, and an indictment which fails to state such facts as show the causal connection between the alleged deceit and the false representations, or, in other words, sufficient facts to inform of the particular offense, deprives him of this right and is fatally defective.

CLARK, C. J., dissenting; HOKE, J., concurring in the dissenting opinion.

APPEAL from *W. J. Adams, J.,* August Term, 1909, of UNION. This is an indictment against the defendant for cheating and defrauding W. C. Heath by means of a false and fraudulent pretense. As the case is decided upon the validity of the indictment, it will be necessary to set it out. It is as follows:

NORTH CAROLINA—Union County.

Superior Court, March Term, 1909.

### STATE *v.* T. C. WHEDBEE.

The jurors for the State upon their oath present that T. C. Whedbee, late of the county of Union, in said State, with force and arms, at and in said county of Union and State of North Carolina, with intent to cheat and defraud one W. C. Heath, did on the 29th day of May, in the year of our Lord one thou-

sand nine hundred and eight (1908), then and there unlawfully, falsely, designedly, knowingly, feloniously and fraudulently, pretend to W. C. Heath, for the purpose of inducing him, the said W. C. Heath, to purchase stock in the Seminole Securities Company, a corporation; that Wylie Jones and W. A. Clark, bankers of Columbia, in the State of South Carolina, were at the head of the Seminole Securities Company, and large stockholders in said company, and directing its management; that no salaries were being paid the officers of said Seminole Securities Company; that it was not costing exceeding 10· per centum to organize the Seminole Securities Company; that said T. C. Whedbee was not receiving anything in excess of 6 per centum for his services in selling stock in said Seminole Securities Company; that the stock of the Seminole Securities Company was then being sold for the sole purpose of capitalizing with the proceeds realized from the sale of stock of the Seminole Securities Company, a corporation being created under the laws of the State of North Carolina as an accident, indemnity and employers' liability insurance company, to be known as the Sterling Casualty Company; that the 50 per centum premium at which the said T. C. Whedbee offered for sale and did sell said stock of the Seminole Securities Company was being used for the sole purpose of creating a surplus fund for the operation of the said Sterling Casualty Company; that a charter had been applied for by himself and others to the State of North Carolina for said accident, indemnity and employers' liability company to be known as the Sterling Casualty Company; that to secure the holders of stock and policies in said accident, indemnity and employers' liability insurance company, to be known as the Sterling Casualty Company, one hundred thousand dollars in securities had been deposited with James R. Young, Insurance Commissioner of North Carolina; by means of which said representations and pretenses said T. C. Whedbee unlawfully, willfully, knowingly, designedly, fraudulently and feloniously did obtain from W. C. Heath his promissory note in the sum of seven hundred and fifty dollars, of the value of seven hundred and fifty dollars, being then and there the property of the said W. C. Heath, with the intent to feloniously cheat and defraud said W. C. Heath of his moneys, goods and chattels; to the great damage of said W. C. Heath.

Whereas, in truth and in fact, Wylie Jones and W. A. Clark, bankers of Columbia, in the State of South Carolina, were not at the head of said Seminole Securities Company, and were not large stockholders in said company and were not directing its management; salaries were being paid to the officers of the

said Seminole Securities Company; it was costing more than 10 per centum to organize the said Seminole Securities Company; T. C. Whedbee was receiving in excess of 6 per centum for his services in selling the stock in the Seminole Securities Company; the stock in the Seminole Securities Company was not then being sold for the sole purpose of capitalizing with the proceeds realized from the sale of the stock of the Seminole Securities Company, a corporation being created under the laws of the State of North Carolina as an accident, indemnity and employers' liability company; that the 50 per centum premium at which the said T. C. Whedbee offered for sale and did sell the stock of the said Seminole Securities Company was not being used for the sole purpose of creating a surplus fund for the operation of the said Sterling Casualty Company; a charter had not been applied for by said T. C. Whedbee and others to the State of North Carolina for said accident, indemnity and employers' liability insurance company; and to secure the holders of stock and policies in said accident, indemnity and employers' liability company, to be known as the Sterling Casualty Company, one hundred thousand dollars in securities had not been deposited with James R. Young, Insurance Commissioner of North Carolina, as he, the said T. C. Whedbee, then and there well knew, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.

The indictment was signed by the solicitor and was duly returned into court as a true bill by the grand jury. The defendant was convicted by the jury and, judgment having been entered upon the verdict, he excepted and appealed to this Court.

*Attorney-General Bickett, Adams, Jerome & Armfield* and *Redwine & Sikes* for plaintiff.

*Osborne, Lucas & Cocke, A. M. Stack, Burwell & Cansler, W. H. Venable, Charles Whedbee* and *P. W. McMullan* for defendant.

WALKER, J., after stating the case: The indictment in this case is palpably defective. A criminal false pretense may be defined to be the false representation of a subsisting fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and which does, in fact, deceive, and by means of which one person obtains value from another without compensation. *S. v. Phifer,* 65 N. C., 321. That case has been repeatedly approved by this Court in numerous subsequent decisions involving the question as to the true nature and the constituent elements of a false pretense. Among

others are *S. v. Mangum,* 116 N. C., 998; *S. v. Matthews,* 121 N. C., 604; *S. v. Davis,* 150 N. C., 851. In *S. v. Matthews, supra,* the present Chief Justice analyzes the offense and states its component parts with great clearness. This Court, in that case, speaking by *Justice Clark,* holds squarely that, in order to convict one of this crime, the State must satisfy the jury beyond a reasonable doubt, (1) that the representation was made as alleged; (2) that property or something of value was obtained by reason of the representation; (3) that the representation was false; (4) that it was made with intent to defraud; (5) that it actually did deceive and defraud the person to whom it was made. The universal rule of civil and criminal pleading requires that the facts, constituting the cause of action, the defense thereto or a crime, must be stated, leaving nothing to inference or to the imagination. The Constitution of our State requires this in the case, for it says that the accused is entitled to be informed of the accusation made against him. It is a fundamental principle of the common law, or at least of Magna Charta, and has been explicitly guaranteed to the citizen in every great reform of our jurisprudence. It is nothing but right and just, and any other rule would be clearly oppressive, if not cruel, in its operation. The indictment must be so drawn and the facts so stated therein that this Court can see upon its face that an offense has been committed, if the evidence corresponds with and supports the allegations of the bill.

Clark, in his great treatise on Criminal Procedure, at pages 153 and 154, states the law with such clearness and precision that we cannot do better than state, at least substantially, what he lays down as the correct rule. "The indictment must show on its face that if the facts alleged are true, and assuming that there is no defense, an offense has been committed. It must therefore state explicitly and directly every fact and circumstance necessary to constitute the offense, whether such fact or circumstance is an external event, or an intention or other state of mind, or a circumstance of aggravation affecting the legal character of the offense.

"Unless the indictment complies with this rule, it does not state the offense. The charge must always be sufficient to support itself. It must directly and distinctly aver every fact or circumstance that is essential, and it cannot be helped out by the evidence at the trial or be aided by argument and inference. With rare exceptions, offenses consist of more than one ingredient, and in some cases of many; and the rule is universal that every ingredient of which the offense is composed must be accurately and clearly alleged in the indictment, or the indictment

will be bad, and may be quashed on motion, or the judgment may be arrested or be reversed on error. What facts and circumstances are necessary to be stated must be determined by reference to the definitions and the essentials of the specified crimes. Having ascertained them, every essential fact must not only have arisen, but it must be stated in the indictment. To constitute the statutory offense of obtaining property by false pretenses, there must have been a representation by the defendant of a past or existing fact or circumstance; it must have been in fact a false representation; it must have been known by him to be false; it must have been made with intent to defraud; it must have been believed by the other party; and he must have parted with his property to the defendant because of it. If an indictment for this offense fails to state any one or more of these facts or circumstances, it fails to charge the offense, and would not support a conviction, even though every essential fact were shown by the evidence to have existed." He supports his text by citing the highest and most reliable authorities.

The bill we now have under consideration is fatally defective in not stating the causal connection between the alleged false representation and the execution of the note for $750 by W. C. Heath by means of the representation. It does not show why the alleged false statements should have caused W. C. Heath to make the note, nor does it show to whom the note is payable. If we were permitted to look at the evidence, upon the defendant's motion in arrest of judgment, we would learn that the note was actually payable to his own order and indorsed in blank by him. It is not stated for what the note was given, whether for stock in either of the corporations mentioned or for something else of value to W. C. Heath. "To make a long story short" and to express the very point more tersely, it does not appear by direct or express allegation, or even by implication, what causal connection the false statements had with the note, or how W. C. Heath was induced thereby to make and indorse the note. We must see by the very indictment itself, not only that false representations were made, but, as we have already said, that they were calculated to deceive W. C. Heath, and that by the deception he was actually induced to give the note. The indictment, therefore, fails at its vital point. We are not allowed to infer that the representations induced the making of the note merely because it is so alleged in the bill, unless we can see the causal relation of the one to the other. So far as appears in the bill, the two transactions, Whedbee's representation to Heath and the giving of the note, were separate and

independent transactions, having no relation to each other, unless we are bound by the allegation that Heath was induced to give the note by reason of the false statements of Whedbee.

We must remember that the false representation must be "calculated to deceive," and this must be shown by the evidence. What is material to be proved, must also be alleged. It is a cardinal rule of every system of pleading that there must be *"allegata"* as well as *"probata,"* and that they should, at least substantially, correspond with each other.

Where we should have had light upon an essential fact, one of the important ingredients if not the capital element of the crime, we are left entirely in darkness. If we should hold this indictment to be good, our ruling would be violative of every constitutional right of the defendant, of every principle of pleading relating to the subject and of every consideration of justice. It will not do to say in this land of freedom, where the rights of every citizen are carefully guarded and preserved, that a man should be convicted. He must be convicted, if at all, according to the law, and in that way only. We sum up on this point as follows: It is obvious, therefore, that the bill fails to show any causal connection between the representations and the giving of the note, or any logical sequence of the latter from the former. It does not appear for what the note was given or what part it played in the negotiations and dealings with respect to the organization and management of the two corporations, the "Seminole Securities Company" and the "Sterling Casualty Company."

The precedents sustaining our conclusion in this case are numerous, and we are not risking anything when we say that they are superabundant. We will refer to some of them later on.

The defendant relies upon *S. v. Dickson,* 88 N. C., 643. We have examined that case with the greatest care. The judge who wrote the opinion for the Court was not only one of the ablest judges who ever sat in this Court, but is entitled to be considered as having as great a knowledge of the criminal law, its principles and procedure, as any of his contemporaries, his predecessors or successors. We would, therefore, pause a long time and take our bearings before overruling anything that he had said. But it is not necessary that we should hold that *S. v. Dickson* is in conflict with our decision in this case. The Court had already decided against the defendant upon other grounds, before the question we are now discussing was reached in that case, and what was said about the question now raised was merely a *dictum,* even if it is susceptible of the

construction placed upon it.  That decision was the correct one
upon the facts of that case.  But we need not resort to any eva-
sion of that ruling, even if it was a *dictum* as to the principle
involved in this case, for we think there was a sufficient allega-
tion in the indictment against Dickson to show that his false
representation had induced the prosecutor to pay him the money
for rafting the timber.  It is almost patent upon the face of
that bill that the relation of employer and employee existed be-
tween John McRae and the defendant, and that the latter had
agreed to raft the timber from Davis' bridge to the mouth of
Rockfish Creek, and that he had represented to McRae that he
had done so, when, in truth and in fact, he had not.  We affirm
that decision, and add that it does not support the contention
of the State in this case.  But it is evident that the Court, when
deciding that case, had overlooked the case of *S. v. Fitzgerald,*
18 N. C., 408, in which *Judge Gaston* delivered the opinion of
the Court and asserted, as a well-established principle of crimi-
nal pleading, that it must appear in the bill, by the statement
of facts sufficient for the Court to see, that there was a causal
connection between the false representation and the giving of
the note, and that the prosecutor was induced by that false rep-
resentation to execute the note.  No judge can improve upon
that great jurist's statement of the law, so we will rely upon
his own words and not upon our own.  He said at page 411:
"The indictment in this case charged that the defendant having,
as a constable, levied certain executions on the property of the
prosecutor, did falsely pretend that a certain paper written by
him, presented to the prosecutor and William Wrathbone, was
a bond for the delivery of property of the prosecutor there-
tofore levied on; when in truth and in fact the same was not a
bond for the delivery of the said property, but a promissory
note for the sum of $26.37½; by means of which false affirma-
tion the defendant did unlawfully procure to be signed and
sealed by the prosecutor and the said William, and to be deliv-
ered to him, the defendant, a promissory note unsealed for the
sum of $26.37½, with intent to defraud the prosecutor and the
said William Wrathbone.  It is not necessary to inquire whether
by means of such false affirmation a cheat or fraud might not
be practiced under circumstances which would subject the of-
fender to a criminal prosecution; but *it seems to us essential,
in a case where there is no obvious connection between the re-
sult produced and the falsehood practiced, that the facts should
be set forth which do connect the consequence with the deceitful
practice.*  It is a general rule in indictments, that 'the special
manner of the whole fact ought to be set forth with such cer-

tainty that it may judicially appear to the court that the indictors have gone upon insufficient premises.' Hawkins b. 2, ch. 55, sec. 57. Now, it is impossible for us to see, upon such a vague and defective statement, how a false representation by the defendant of the nature of an instrument which he had and exhibited, or presented, could have induced any person to give the defendant a bond for the payment of money."

This would seem to be all-sufficient to sustain our ruling, but the reports of the decisions in other jurisdictions are full of cases to the same effect.

In *People v. Brown,* 38 N. W., 916, the Court held "that an information charging the obtaining of the signature of a person to two certain promissory notes on false and fraudulent representations as to a company, of which the defendant claimed to be the agent, which does not state the consideration of the notes, to whom they were payable, and whether negotiable or not, or whether they were used in any dealings between the maker and such company, or respondent and the company, is insufficient, as not showing any causal connection between the false representations and the giving of the notes." And in *People v. White,* 7 Cal. App., 98, the Court said: "This analysis of the information shows that there does not appear to be any natural connection between the representations charged to have been made by the defendants and the delivery of the money to the defendants. The representations were concerning a company with which it is not alleged that defendants had any connection, nor with which said Furrar entered into any relations because of said representations. 'The indictment must show that the property was obtained by means of the false pretense alleged. Accordingly, when there appears to be no causal connection between the pretense and the delivery of the property, such additional facts as are necessary to show the relation must be alleged. A defect in the indictment arising from failure to show the connection between the false pretense and the obtaining is a material one, and it is not cured by verdict.' 19 Cyc., 420, and numerous authorities cited under Note 37." In *S. v. Connor,* 110 Ind., 469, the principle was thus stated by the Court: "An indictment for obtaining goods by false pretenses, which charged the accused with representing that his firm had commenced business with a certain capital; that, at the date of the representations, they had goods on hand and debts due to them equal to that amount; that the total indebtedness of the firm only amounted to a specified sum, and that it was doing a certain amount of business each year; and that a merchant 'relying on said representations and pretenses, and

believing the same to be true, and being deceived thereby,' sold a quantity of goods on credit, is insufficient if it is not averred that it was by means of such false representations that the merchants were induced to part with their goods." The Court said, at pages 455 and 456: "Counsel agree that the motion to quash the indictment was sustained upon the ground that both counts failed to show with sufficient certainty that the possession of the property referred to was retained by the firm of Connor & McClellan by means of the false pretenses alleged to have been made by the appellee. To sustain a prosecution for obtaining goods under false pretenses, it must be in legal effect charged in the indictment, as well as proved at the trial, that the goods were obtained by means of the alleged false pretenses. Whart. Crim. Law, sec. 1175; 2 Bish. Cr. Law, sec. 461; Moore's Cr. Law, sec. 739; *S. v. Orvis,* 13 Ind., 569; *Todd v. State,* 31 Ind., 514; *S. v. Williams,* 103 Ind., 235, 2 N. E. Rep., 585. The false pretenses charged must have at least entered into the transaction, and have constituted a material inducement to the transfer of the possession of the goods. Both counts of the indictment in this case averred with sufficient certainty the falsity of the representations alleged to have been made by the appellee, and that Kellogg & Co. were induced to part with the possession of the goods in question. The succeeding allegation, that eighteen days after the false representations were so made and relied on, Kellogg & Co. sold and delivered these goods to Connor & McClellan on credit, at their (the latter's) special instance and request, failed to indicate any natural or logical connection between the false representations and the sale and delivery of the goods. The indictment must show that the property was obtained by means of the false pretense alleged. Accordingly, when there appears to be no natural connection between the pretense and the delivery of the property, such additional facts as are necessary to show the relation must be alleged." 19 Cyc., 429. We could cite authorities without number to sustain the conclusion in this case, but we will not prolong the opinion by such a course, as the cases are all collated in the excellent and exhaustive brief of defendant's counsel.

The case of *S. v. Fitzgerald, supra,* is of itself sufficient as authority in condemnation of this indictment. It was decided by a Court composed of *Chief Justice Ruffin, Judge Daniel* and *Judge Gaston,* and we are perfectly safe in relying upon what they have declared is the law. That case is not overruled by *S. v. Dickson.* It was not even cited in the latter case, and we have no idea that the decision in that case was intended to be considered as bad law.

There were many other exceptions taken, during the trial of the case, to the rulings of the court, which, if the indictment had been good, would deserve our most *serious* consideration.

Without intimating, in the least, any opinion upon the law, as applied to the evidence in the case, we would suggest to the solicitor that he consider most carefully whether, upon the facts which the evidence tends to prove, he can make out a case against the defendant for criminal false pretense. This is only a suggestion and nothing more. If the defendant, is guilty, he should be convicted and punished, but it is well to pause sometimes and consider whether a defendant is guilty merely because he has been indicted by the grand jury. The great and central principle in this case is that the law, not law made by us, but the law of the centuries, has required that the indictment must show a state of causation—that is, that the false representation induced the prosecutor to incur a liability or to surrender something which otherwise he would not have done. This is the crucial test.

The statute dispensing with the necessity of alleging or proving an intent to defraud any particular person has no bearing whatever upon this case, but is as foreign to the point presented as it could possibly be. It is not the general allegation or proof of an intent to defraud that is missing, but the causal relation between the alleged false pretense and the deceit, and the indictment, therefore, did not inform the defendant of the crime charged against him. It is his constitutional right to be so informed; and what power have we to ignore this plain mandate of the Constitution and deny him this invaluable privilege? If he asserts it, we must grant it, or we fail in our duty to administer justice according to the law which protects him in his rights as a citizen.

The cases of *S. v. Matthews,* 91 N. C., 637, and *S. v. Mikle,* 94 N. C., 843, and the other authorities relied on do not sustain the position of the State in this case. In all of them causal connection appeared most clearly. The case of *Thomas v. People,* 34 N. Y., 351, which is specially relied on, sustains our ruling, and the text-books, when properly construed, are to the same effect. A cursory reading of them will show this to be the case. As to *S. v. Dickson,* the Court manifestly overlooked the decision in *S. v. Fitzgerald,* wherein the law is firmly established as we say it now is, and the opinion was written by one of the greatest jurists this or any other State has produced, *Judge William Gaston.* He was careful and painstaking and always fortunate in stating and applying a legal principle. He had no sympathy with the law-breaker, but, great magistrate as he was, dis-

charged the duties of his high office "with the cold neutrality of the impartial judge" and according to the laws of his State as he. understood them. Have we ever had a greater or more masterful intellect in this Court? By his side sat one of the greatest of our Chief Justices, *Thomas Ruffin,* a noted criminal lawyer, and *Judge Daniel,* who was also a thoroughly trained and well-equipped lawyer. His opinions deservedly rank among the very best ever delivered by this Court. *S. v. Fitzgerald* condemns the indictment in this case as being insufficient to inform the defendant, under the Constitution, of the offense charged against him.

Before taking leave of the case, it may be well to remark that the indictment charges the false pretense to have been made with the intention of inducing W. C. Heath to subscribe to stock in the Seminole Securities Company, whereas it is not anywhere alleged that he actually subscribed to any such stock, but that the defendant obtained a note from the said Heath, for what purpose it does not appear, nor does it appear to whom the note was payable or what connection, if any, it had with the purchase of the stock; and further, it does not appear that the Seminole Securities Company ever received even a penny from W. C. Heath for its stock or for any other consideration.

As the indictment is fatally defective, we must remand the case with directions to arrest the judgment.

Judgment arrested.

CLARK, C. J., *dissenting:* The exceptions require no discussion. The defendant moves in this Court in arrest of judgment.

This is a statutory offense (Rev., 3432), and differs materially from "cheating" at common law. The indictment charges specifically everything required by the statute to constitute the offense of "false pretense." "An indictment is sufficient under Rev., 3254, if it charges in the words of the statute." *S. v. Roberson,* 136 N. C., 587; *S. v. Whitley,* 141 N. C., 823; *S. v. Harrison,* 145 N. C., 408; *S. v. Leeper,* 146 N. C., 655.

That statute (Rev., 3284) was enacted because of the fine-spun technicalities which had often aided the guilty to escape justice and thereby "brought reproach upon the courts." *Ruffin, C. J.,* in *S. v. Moses,* 13 N. C., 465, cited *S. v. Barnes,* 122 N. C., 1035. It provides that no indictment "shall be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding sufficient matters appear to enable the court to proceed to judgment." Necessarily,

sufficient matter appears if the indictment charges every ingredient which the statute provides shall constitute the offense.

The statute creating this offense of "cheating by false pretense" (Rev., 3432) provides: "If any person shall knowingly, designedly, by \* \* \* any false pretense whatsoever, obtain from any person \* \* \* any promissory note \* \* \* with intent to cheat and defraud any person \* \* \* he shall be guilty of a felony." This is the whole statute, eliminating duplicating words and those stating other kinds of false pretense.

This indictment charges that the defendant, with intent to cheat and defraud W. C. Heath, did falsely, knowingly, designedly and feloniously make to him certain statements (explicitly and fully stating them), and explicitly stating that each statement was untrue, and by means of which false representations and false pretenses the defendant knowingly, designedly and feloniously did obtain from said Heath his promissory note in the sum of $750 and of the value of $750, with intent to cheat and defraud said Heath to his great damage. The indictment is much fuller, but contains the above, which is a full compliance with the statute. *S. v. Eason,* 86 N. C., 674; *S. v. Mikle,* 94 N. C., 846. Indeed, the proviso to the statute (Rev., 3432), in order to prevent technical defenses, provides that it shall not be necessary to allege or prove an intent to defraud any particular person. Nor was it necessary to allege that the prosecutor subscribed to the stock. The statute, which creates the offense, and not the court, makes the offense complete if in consequence of the false pretense the defendant procured the note.

The defendant, who found means to retain nine able and influential counsel, who presented every possible defense, with the utmost vigor, was tried by an impartial jury, to not one of whom he raised any objection, yet was convicted. The indictment gave him information of every ingredient that the statute required to constitute the offense. It is beyond credibility that he was not well advised of what offense he was charged.

Yet he now moves in this Court to arrest the judgment because the indictment does not charge how the false representations enabled him to cheat and defraud. The statute does not require this, nor the precedents. If the false representations were not sufficient to cheat and defraud, that was a matter of defense upon the proof, and the many able counsel of the defendant surely presented every possibility of a defense on that and every other ground to the jury.

In *S. v. Dickson,* 88 N. C., 644, the same point was made,

and *Ashe, J.*, said: "This bill contains *all the essential elements* of an indictment for false pretense. It sets forth the false pretense of a subsisting fact, the knowledge of the defendant, the negation, the intent to cheat, and that the money of the prosecutor was unlawfully obtained by the false pretense. *Whether the false pretense was calculated to impose on the prosecutor, and induce him to part with his money, or was in fact the means of obtaining his money, were questions that properly belonged to the province of the jury.* Russell on Crimes, 622, and Note L."

The indictment in the present case charges that the false representations set out were the means by which the prosecutor was cheated. Whether it was not calculated to do so was a matter of defense on the proof. To allege how the defendant was deceived is not required by the statute beyond the allegation of the falsity of the statements and that by means thereof he was cheated, and it was not needed to be charged to give any information to the defendant. The charge and proof that by such means the defendant did deceive and cheat the prosecutor, and that he so intended, is *prima facie* sufficient, and it was for the defendant thus charged to show that the trick and deceit were insufficient. Such technicality as is here set up by the defendant could never be of any aid to an innocent man. It could only avail to protect a guilty one.

The learned solicitor followed our statute and our latest decision, as well as the approved precedents in Archbold, Wharton and others. He could not be required or expected to do more. *S. v. Dickson, supra,* is cited and approved in *S. v. Matthews,* 91 N. C., 637, where the defendant set up the "lame defense" (as the Court calls it) that the defendant was deceived by charitable motives, which had been roused by the defendant's false representations. That case in turn is approved, *S. v. Mikle,* 94 N. C., 846, in which case the indictment is set out, and is exactly such as in this case.

In *Meek v. State,* 117 Ala., 121, the Court says: "We do not understand that the indictment for obtaining goods by false pretenses must necessarily show that the alleged false pretense was *capable of inducing* the party to whom made to part with his goods, *further than the allegation that by means of the pretense the goods were obtained.* * * * Whether or not the pretense really operated as such material inducement is a matter of proof."

In *Thomas v. The People,* 34 N. Y., 351, it is said: "It is sufficient to state, negate and prove the false pretense. The materiality and influence of such pretense is a question for the jury, unless upon the face of the indictment the pretense

appears clearly to be immaterial." To the same purport *Cowan v. State,* 22 Neb., 519, and many other cases.

In Clark's Criminal Law, p. 321, he says it is not necessary "that the pretense shall be such that ordinary care and common prudence could not guard against it, as is the case of cheating at common law," citing cases.

The defendant relies upon an old case, *S. v. Fitzgerald,* 18 N. C., 408. Not only was that case (unlike *S. v. Dickson,* 88 N. C., 644, and other late cases above cited) decided upon a statute different in some respects from that now in force and under the influence of the decisions upon "cheating at common law"—a very different offense—but on page 411 the Court concludes, "Where there is no obvious connection between the result produced and the falsehood practiced, the facts should be set forth which do connect the consequences with the deceitful practice," and states as a basis a rule as to indictments in Hawkins P. C., which has been repealed by Rev., 3254, above cited. In this case, however, as a matter of fact, the jury found the connection between the false pretense and the cheating obvious, notwithstanding a most strenuous defense.

Our decisions for fifty years past or more are uniform that an indictment for any statutory offense whatever is sufficient if (as in this case) it follows the words of the statute, and it is not necessary to charge the means used or the circumstances. Among numerous cases to this effect are *S. v. George,* 93 N. C., 567; *S. v. Brady,* 107 N. C., 822; *S. v. Haddock,* 109 N. C., 875. Even in an indictment for murder, it is no longer necessary to allege the weapon, the nature of the wound or the "instigation of the devil."

In *S. v. Harwood,* 104 N. C., 728, the Court says: "Nor is it necessary to specify by what acts or words the enticing was effected. It is generally sufficient to charge the statutory offense in the words of the statute, and it is necessary to be specific in setting out the facts only when the statute is, in terms, too comprehensive, and this to show that the offense is embraced in it.

"In the indictment under a statute which prohibits the abducting, or by any means inducing a child under fourteen years of age to leave the relative mentioned, or school where he or she may be placed, providing that the one so acting shall be guilty of a crime, etc., it was held sufficient to use the words of the statute defining the offense, nor was it needful to set out the means by which the abduction was effected. *S. v. George,* 93 N. C., 567."

In Joyce on Indictment, sec. 328, the author says: "In an

indictment for an offense done with intent to defraud, it is sufficient to aver, in the general words, that it was done with intent to defraud, it being held that the pleader is not required to set out the evidence or facts going to prove the intent to defraud, or the particular matters by which the party named in the indictment was to be defrauded." The author cites *McCarty v. U. S.*, 101 Fed., 113, and *U. S. v. Ulrici*, Fed. Cases, No. 16594, which cases support the text.

Besides, the indictment in this case is an exact copy of the approved Forms of Indictment for False Pretense, Archbold Cr. Pl. (3 Ed.), 245; Wharton Cr. Pl. and Pr., 528. In none of the Precedents of Forms for this offense is it set out how the false pretense deceived, beyond, as in this case, the allegation that there was a false statement of a subsisting fact with intent to cheat and defraud and that *by means thereof* the prosecutor was defrauded.

HOKE, J., concurs in dissenting opinion.